UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HERB REED ENTERPRISES, LLC,

    Plaintiff,

v.                                                  Case No:  8:14-cv-56-T-17AEP

THE WORLD FAMOUS PLATTERS
ROAD SHOWS I LLC, et al.,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court upon Plaintiff Herb Reed Enterprises, LLC's Motion for a Preliminary Injunction (Dkt. No. 11), which was referred to the undersigned by the Honorable Elizabeth A. Kovachevich for a Report and Recommendation (Dkt. No. 13). Defendants do not oppose Plaintiff's motion.[1] (Dkt. No. 33.) For the reasons stated herein, the undersigned recommends that Plaintiff's Motion for Preliminary Injunction (Dkt. No. 11) be granted as to all Defendants except Yolanda Fletcher.[2]

**I. Background**

Plaintiff brought this action against Defendants alleging trademark infringement, unfair competition, and trademark dilution. (Dkt. No. 1.) In 1953, Herbert Reed founded and

---

[1] In its January 30, 2014 notice to the Court (Dkt. No. 33), Plaintiff informed the Court that Defendants did not oppose Plaintiff's request for a preliminary injunction. Nonetheless, Plaintiff also informed the Court that Defendant Yolanda Fletcher has yet to be served in this case; thus, it can reasonably be assumed that Ms. Fletcher is unaware of Plaintiff's Motion for Preliminary Injunction and therefore unable to agree to the preliminary injunction. (Dkt. No. 33 at 1, n.1.)

[2] Federal Rule of Civil Procedure 65(a) provides that "[t]he court may issue a preliminary injunction only on notice to the adverse party. *See also* Local Rule 4.06(a) ("A preliminary injunction may not be issued absent notice."). Because Ms. Fletcher has neither been served in this action nor provided notice of Plaintiff's motion for preliminary injunction, the injunction cannot issue against her.

named the vocal group "The Platters." (Dkt. No. 4 at 2.) The "original" members of the group included Mr. Reed, Paul Robi, David Lynch, Tony Williams, and Zola Taylor. (Dkt. No. 4 at 2.) Mr. Reed continuously performed under the name "The Platters" or some variation of "Herb Reed and The Platters" from 1953 until 2011. (Dkt. No. 4 at 2.) During the 1950s and 1960s, the Platters charted several number one hits, and they were later inducted into the Rock and Roll Hall of Fame, the Vocal Group Hall of Fame, and the Grammy Hall of Fame. (Dkt. No. 4 at 2.)

In 1954, Buck Ram became the manager of the Platters, and he founded the company Five Platters, Inc. ("FPI"). (Dkt. No. 4 at 3.) Mr. Ram then attempted to have the "original" five members of the Platters assign their rights in the group's name to FPI. (Dkt. No. 4 at 3.) However, the assignments were later deemed to be void. (Dkt. No. 4 at 3.) Over the next several years, the "original" members of the Platters, except for Mr. Reed, left the group. (Dkt. No. 4 at 3.) And in 1969, Mr. Reed discontinued his relationship with FPI but continued performing using the name "The Platters" or some derivative thereof. (Dkt. No. 4 at 3-4.)

As the "original" members of the Platters began leaving the group, Mr. Ram and FPI commenced litigation against those members to prevent them from using "The Platters" mark in connection with their performances.[3] (Dkt. No. 4 at 3-4.) As a result of this litigation, Mr. Reed agreed that he would perform under the name "Herb Reed and The Platters" or some variation thereof and that he would not perform under the name "The Platters" unless it was

---

[3]Litigation over the mark "The Platters" has been extensive. See *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239, 1243-45 (9th Cir. 2013), for a succinct summary of some of the relevant past litigation regarding "The Platters" mark. *See generally Marshak v. Reed*, 87 Fed. Appx. 208 (2d Cir. 2004); *Five Platters, Inc. v. Powell*, 7 Fed. Appx. 794 (9th Cir. 2001); *Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990).

determined that FPI did not have any rights to the name. (Dkt. No. 4 at 4.)

In December 2003, Mr. Reed registered the mark "Herb Reed and The Platters" with the United States Patent and Trademark Office, which, through a series of assignments, was eventually transferred to Plaintiff.[4] (Dkt. No. 4 at 4-5.) In 2010, Plaintiff initiated an action against FPI, Personality Productions, Inc. ("PPI"), and Jean Bennett in the United States District Court for the District of Nevada alleging trademark infringement. (Dkt. No. 4 at 4.) The Nevada District Court entered a permanent injunction in favor of Plaintiff, stating that "Herbert Reed, having first used the mark 'The Platters' in commerce in 1953, and having continuously used the mark in commerce since then has superior rights to the mark to all others, including [FPI] and [PPI], and anyone claiming rights from or through them." *Herb Reed Enters., Inc. v. Bennett*, No. 2:10-CV-01981-JCM-RJJ (D. Nev. May 16, 2011) (order on default judgment and permanent injunction); (Dkt. No. 4, Ex. 2).

Defendants are members of a vocal group dubbed "The World Famous Platters." (Dkt. No. 4 at 5.) None of the members of "The World Famous Platters" were ever members of the actual Platters. (Dkt. No. 4 at 5.) Plaintiff contends that Defendants, in using the name "The World Famous Platters" to promote their vocal group, used Plaintiff's registered mark was well as its unregistered mark "The Platters" without authorization resulting in interference with Plaintiff's use of the marks and dilution of Plaintiff's goodwill associated with the marks. (Dkt. No. 1 at 5; Dkt. No. 11 at 2-3.) As such, among other relief, Plaintiff seeks a preliminary injunction enjoining Defendants or anyone they manage from using Plaintiff's marks unless they designate their vocal group as a tribute band. (Dkt. No. 11 at 3.)

---

[4]In June 2010, the United States Patent and Trademark Office issued an "Acknowledgment of Incontestability" as to the mark "Herb Reed and The Platters" in accordance with 15 U.S.C. § 1065. (Dkt. No. 4, Ex. 1.)

## II. Preliminary Injunction

The decision to grant or deny a preliminary injunction is within the discretion of the district court. *Carillon Imps., Ltd. v. Frank Pesce Int'l Grp. Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997). In determining whether a preliminary injunction should issue, the district court considers whether the moving party has demonstrated: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the moving party unless the injunction issues; (3) the threatened injury to the movant outweighs the potential harm the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not disserve or be adverse to the public interest. *MacGinnitie v. Hobbs Grp., LLC*, 420 F.3d 1234, 1240 (11th Cir. 2005). Since a preliminary injunction is an extraordinary and drastic remedy, a district court should not issue a preliminary injunction unless the movant clearly establishes the burden of persuasion as to each of the four prerequisites. *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003).

The Court originally scheduled a hearing on Plaintiff's motion for preliminary injunction on January 31, 2014. (Dkt. No. 22.) Defendants, with the exception of Yolanda Fletcher, were properly notified and served with a copy of the motion for preliminary injunction. (Dkt. No. 31.) Likewise, Defendants, with the exception of Yolanda Fletcher, were properly notified and served with notice of the preliminary injunction hearing. (Dkt. No. 31.) However, following notice from Plaintiff that Defendants did not oppose Plaintiff's motion (Dkt. No. 33), the hearing was canceled.[5] (Dkt. No. 34.) Nevertheless, Plaintiff established all of the factors necessary for issuing a preliminary injunction.

---

[5]Where material facts are not in dispute, the Court need not hold an evidentiary hearing on a motion for preliminary injunction. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1313 (11th Cir. 1998).

**A. Success on the Merits**

First, to establish a likelihood of success on the merits in a trademark infringement action, Plaintiff must show (1) ownership of the infringed material and (2) that the alleged infringer is using a confusingly similar mark such that consumers are likely to confuse the two. *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997).

As to Plaintiff's ownership of the unregistered mark "The Platters," "[u]nder common law, trademark ownership rights are 'appropriated through actual or prior use in commerce.'" *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (quoting *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1022 (11th Cir. 1989) (citation omitted)). As stated by Plaintiff, it is undisputed that Mr. Reed and the other original members of the Platters were the first to use "The Platters" mark in connection with a vocal group. (Dkt. No. 4 at 2; Dkt. No. 11 at 11.) Additionally, Mr. Reed continuously used the mark "The Platters" from 1953 to 2011, with the exception of the time period involving the dispute with FPI in which Mr. Reed agreed to refrain from using the mark until the dispute was resolved and instead performed under some variation of "Herb Reed and The Platters." (Dkt. No. 4 at 2, 4.) Mr. Reed then transferred all of his rights to use "The Platters" mark to Plaintiff. (Dkt. No. 4 at 4-5.) Further, as to Plaintiff's right to the registered mark "Herb Reed and The Platters," registration constitutes prima facie evidence of ownership of a mark. *See* 15 U.S.C. §§ 1057(b), 1115(a); *Ryder Sys., Inc. v. Storage & Moving Servs., Inc.*, No. 13-61466-CIV, 2013 WL 3873231, at *4 (S.D. Fla. July 25, 2013). Mr. Reed also transferred his rights in the registered mark to Plaintiff. (Dkt. No. 4 at 4-5.) Accordingly, because Plaintiff has shown "actual or prior use in commerce" of the mark "The Platters" by its predecessor in

5

interest and has shown registration of the mark "Herb Reed and The Platters," Plaintiff has established its superior ownership interest in the marks.

However, to succeed on his trademark infringement claim, Plaintiff must also show that Defendants' use of its marks creates a likelihood of confusion. *Lone Star Steakhouse*, 106 F.3d at 360. The Eleventh Circuit has established seven factors to consider in determining the likelihood of confusion between a plaintiff's mark and an allegedly infringing mark: "(1) the strength of the plaintiff's mark; (2) the similarity between the two marks; (3) the similarity of the product or service; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent in using a trademark that is similar to the plaintiff's trademark; and (7) consumers' actual confusion." *Ryder Sys., Inc.*, 2013 WL 3873231, at *5; *Univ. of Ga. Athletic Assoc. v. Laite*, 756 F.2d 1535, 1542 (11th Cir. 1985). In determining whether a likelihood of confusion exists, these factors are merely intended to be used as a guideline and need not be strictly considered. *Mont. Prof'l Sports, LLC v. Leisure Sports Mgmt., Inc.*, 422 F. Supp. 2d 1271, 1278 (M.D. Fla. 2006).

Considering the above factors, Plaintiff has established a likelihood of confusion. First, Plaintiff's marks are strong because the marks are likely fanciful or arbitrary or, at the very least, suggestive, and do not merely describe Plaintiff's services—providing musical performances.[6] Second, Defendants' mark, "The World Famous Platters," is substantially similar to that of Plaintiff's marks because it contains the whole of Plaintiff's unregistered mark, and the addition of "World Famous" does little to differentiate the groups. Third, Plaintiff and Defendants offer the same services—vocal performances. In fact, Plaintiff and

---

[6]The strength of trademarks are measured by their distinctiveness, which falls into four general categories, listed in ascending order of strength: (1) generic, (2) descriptive, (3) suggestive, and (4) fanciful or arbitrary. *Ryder Sys., Inc.*, 2013 WL 3873231, at *5 (citing *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1209 (11th Cir. 2009)). The stronger or more distinctive the mark, the more protection it is entitled. *Id.*

Defendants perform the same hit songs made famous by the "original" members of the Platters. Fourth, both Plaintiff and Defendants offer their services to live music venues and advertise using print and electronic media. (Dkt. No. 4 at 6-10.) Last, Plaintiff has provided evidence that Defendants intentionally adopted its mark to benefit from the reputation associated with that mark. For example, Defendants' Facebook page represents that Defendants' group was founded in 1953 and that it "w[as] the First Black Group in History to have a #1 Pop Record. First Black Group to have a Music Video. With 35 Top Ten Hits, the Platters have cemented their status as Soul Music Pioneers." (Dkt. No. 4 at 7.) Defendants have also used photographs of the "original" members of the Platters to market themselves. (Dkt. No. 4 at 8.) Further, although Plaintiff contacted Defendants and requested that they designate their group as a tribute band, despite assurances from Defendants that they would identify themselves as a tribute band, Defendants continued to market themselves as "The World Famous Platters." (Dkt. No. 4 at 13-14.) Such behavior by the Defendants indicated that they intended to use Plaintiff's mark with the intention of deriving benefit from Plaintiff's reputation and goodwill, which, standing alone, is sufficient to support a finding of likelihood of confusion. *See Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1340 (11th Cir. 1999) ("If it can be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation, this fact alone may be enough to justify the inference that there is confusing similarity.").[7]

Accordingly, Plaintiff has established both superior ownership of the marks and a likelihood of confusion. As such, Plaintiff has met its burden to establish a likelihood of success on the merits.

---

[7] The Court finds no need to address the last factor, actual confusion, because actual confusion is not a necessary prerequisite to a finding of likelihood of confusion. *See Frehling Enters., Inc.*, 192 F.3d at 1340.

**B. Irreparable Harm**

Next, Plaintiff must show that it has suffered irreparable harm from Defendants' use of its marks. Until relatively recently, the Eleventh Circuit has steadfastly held that a showing of likelihood of confusion sufficiently constitutes a showing of irreparable harm. *See Ferrellgas Partners, L.P. v. Barrow*, 143 Fed. Appx. 180, 191 (11th Cir. 2005); *McDonald's Corp.*, 147 F.3d at 1310. However, following the Supreme Court's decision in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), in which the Supreme Court rejected the application of categorical rules to the grant or denial of injunctive relief in a patent infringement case, the Eleventh Circuit expressed that the presumption of irreparable injury upon a showing of likelihood of confusion may no longer be valid. *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227-28 (11th Cir. 2008). However, the Eleventh Circuit expressly declined to pass on the question, leaving its prior precedent intact. *Id.* Nevertheless, even without the presumption, Plaintiff has established irreparable injury sufficient to support its request for preliminary injunctive relief.

Irreparable injury occurs through a "'loss of control of reputation, loss of trade, and loss of good will.'" *Ferrellgas Partners, L.P.*, 143 Fed. Appx. at 190 (quoting *Pappan Enters, Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998)). Defendants' unauthorized use of Plaintiff's marks inhibits Plaintiff's ability to control what factors impact its reputation and goodwill. This constitutes irreparable injury because the damage to Plaintiff's reputation and goodwill cannot be easily compensated with monetary damages. *See Bentley Motors, Ltd. Corp. v. McEntegart*, 899 F. Supp. 2d 1291, 1303 (M.D. Fla. 2012) (quoting *Liquid Glass Enters., Inc. v. Porsche AG*, 8 F. Supp. 2d 398, 406 (D. N.J. 1998)). Because Plaintiff has shown that Defendants have been using its mark and that such use could

potentially impact Plaintiff's reputation and goodwill, Plaintiff has adequately demonstrated irreparable injury.

## C. Balance of Hardships

Third, Plaintiff must show that the threatened injury from Defendants' use of its mark outweighs the potential harm the proposed injunction may cause Defendants. As previously determined, Plaintiff will suffer irreparable injury should Defendants be permitted to continue using Plaintiff's mark. On the other hand, however, Defendant will not suffer any harm from being prevented from using Plaintiff's marks because, as they have admitted, they have no legitimate interest in Plaintiff's marks (Dkt. No. 4 at 6), and, further, Plaintiff does not seek to enjoin Defendants from performing so long as they clearly indicate that they are a tribute band. (Dkt. No. 11 at 18.) Thus, this factor weighs in favor of granting Plaintiff's request for injunctive relief. *See Ryder Sys., Inc.*, 2013 WL 3873231, at *7 (finding in favor of the plaintiff in balancing hardships because the defendant had no legitimate interest in the use of the plaintiff's marks and because the plaintiff did not seek to prevent the defendant from engaging in its business in a noninfringing manner).

## D. Public Interest

Last, Plaintiff must show that its request for injunctive relief is not adverse to the public interest. The public interest is best served in protecting trademarks because it eliminates confusion in the marketplace. *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001). Therefore, the public interest would not be adversely affected by the issuance of a preliminary injunction in this case.

**E. The Bond**

Plaintiff has also requested that the Court waive the security requirement of Federal Rule of Civil Procedure 65(c) because the Defendants do not oppose the preliminary injunction. (Dkt. No. 33 at 1-2.) Rule 65(c) provides "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Nevertheless, a court has discretion to issue a preliminary injunction without requiring the movant to give security. *Tancogne v. Tomjai Enters. Corp.*, 408 F. Supp. 2d 1237, 1252 (S.D. Fla. 2005). Accordingly, because Defendants are unopposed to Plaintiff's request for injunctive relief and Defendants are unlikely to suffer any damages from the issuance of a preliminary injunction, Plaintiff should not be required to post security in accordance with Rule 65(c).

### III. Conclusion

As previously discussed, a preliminary injunction is an extraordinary remedy to be used only when a party has meet its burden in establishing the four prerequisites. *Four Seasons*, 320 F.3d at 1210. Here, Plaintiff has met that burden.

Accordingly, after due consideration, it is hereby RECOMMENDED:

1. Plaintiff's Motion for Preliminary Injunction (Dkt. No. 11) be GRANTED as to all Defendants except Yolanda Fletcher;

2. The security requirement of Federal Rule of Civil Procedure 65(c) be waived; and

2. In light of the lack of opposition from the served Defendants, this Report and Recommendation be adopted immediately upon issuance rather than allowing for a fourteen-day objection period.

IT IS SO REPORTED in Tampa, Florida, on this 7th day of February, 2014.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Hon. Elizabeth A. Kovachevich
Counsel of Record